J-S49018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: O.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., MOTHER | No. 2077 MDA 2014 |

Appeal from the Order entered November 7, 2014,
in the Court of Common Pleas of Lackawanna County,
Juvenile Division, at No(s): CP-35-DP-0000017-2013
Orphans' Court No. A-30-2014

| | |
|---|---|
| IN THE INTEREST OF: S.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., MOTHER | No. 2078 MDA 2014 |

Appeal from the Order entered November 7, 2014,
in the Court of Common Pleas of Lackawanna County,
Juvenile Division, at No(s): CP-35-DP-0000016-2013,
Orphans' Court No. A-31-2014

BEFORE: BENDER, P.J.E., ALLEN, and OLSON, JJ.

MEMORANDUM BY ALLEN, J.: **FILED AUGUST 14, 2015**

A.B. ("Mother") appeals from the orders that involuntarily terminated her parental rights to her son, S.B., born in December of 2008, and her daughter, O.B., born in December of 2009 (collectively, "the children"). Upon careful review, we affirm.[1]

In its opinion that accompanied the subject order, the orphans' court fully and correctly set forth the relevant facts and procedural history of this

---

[1] The parental rights of the children's father, E.B. ("Father"), were involuntary terminated by the same order. Father has not filed notices of appeal, and he is not a party to this appeal.

case, which we adopt herein. *See* Trial Court Opinion, 11/7/14, at 1-4, 12-18. By way of background, Father voluntarily placed the children in foster care on February 4, 2013; Mother was incarcerated at the time. *Id.* at 2. Mother was released from prison shortly before the adjudication hearing on March 15, 2013. N.T., 6/4/14, at 133. During the hearing, Mother and Father stipulated to the children's adjudication. *Id.* at 3. A permanency plan of reunification was established for the family.

On April 10, 2014, the Lackawanna County Office of Youth and Family Services ("OYFS") filed petitions for the involuntary termination of Mother's parental rights to the children pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). A hearing was held on June 4, 2014, June 9, 2014, and September 9, 2014. OYFS presented the testimony of the following witnesses: Stacey Vogler-Musil, the OYFS caseworker; Doug Vreeland, a counselor at the Drug & Alcohol Treatment Service, via telephone; Corey Flemming, the adoption permanency worker at Children's Choice in Philadelphia; and Roberta Fratzola, the OYFS caseworker. Mother testified on her own behalf.

By order dated November 7, 2014, the orphans' court granted the petitions. Mother timely filed notices of appeal and concise statements of

J-S49018-15

errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.[2]

On appeal, Mother presents the following issues for our review:

A. Whether the [orphans'] court erred as a matter of law or sufficiently abused its discretion in determining [that OYFS] presented sufficient evidence to satisfy the grounds for termination of the Mother's parental rights under Section [2]511(a)(8) of the Adoption Act?

B. Whether the [orphans'] court erred as a matter of law or sufficiently abused its discretion in determining [that OYFS] presented sufficient evidence to satisfy the grounds for termination of the Mother's parental rights under Section [2]511(a)(1) of the Adoption Act?

C. Even if this Court determines [that OYFS] presented sufficient evidence to satisfy the grounds for termination of the Mother's parental rights under Section [2]511(a)(1) and/or Section [2]511(a)(8) of the Adoption Act, whether the [orphans'] court nevertheless erred as a matter of law and/or manifestly abused its discretion in determining that the conditions that led to removal have not been remedied and reunification of parent and child[ren] was not imminent at the time of the hearing[?]

D. Even if this Court determines [that OYFS] presented sufficient evidence to satisfy the grounds for termination of the Mother's parental rights under Section [2]511(a)(1) and/or Section [2]511(a)(8) of the Adoption Act, whether the [orphans'] court nevertheless erred as a matter of law and/or manifestly abused its discretion in determining that termination of the Mother's parental rights is in the best interest of the child[ren]?

Mother's Brief at 5.[3]

_____

[2] We recognize this appeal has been delayed for listing before this Court. The delay is due to the untimely receipt of the certified record. This Court has acted diligently in attempting to facilitate the prompt processing of this appeal.

[3] We have re-ordered Mother's issues for ease of disposition.

We consider Mother's issues mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows:[4]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

---

[4] *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that this Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights).

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

With respect to Section 2511(b), the requisite analysis is as follows:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis

necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Instantly, because we conclude that the orphans' court properly terminated Mother's parental rights pursuant to Section 2511(a)(2), we do not review Mother's first issue related to Section 2511(a)(8). *See B.L.W.*, *supra*. In addition, we do not review Mother's second issue related to Section 2511(a)(1) because OYFS did not seek termination under that subsection. To the extent that Mother raises an issue with respect to Section 2511(a)(2) in her third issue, we affirm the order under this subsection on the basis of the orphans' court opinion, which the testimonial evidence overwhelmingly supports. *See* Trial Court Opinion, 11/7/14, at 12-17, 25-27 (finding that Mother was diagnosed with an opioid dependence and was unsuccessfully discharged by the Drug and Alcohol Treatment Service for failing to attend; Mother failed to complete drug screens requested by OYFS; Mother failed to participate in a mother's group and a parenting program as set forth in her permanency plan; Mother never reported to the caseworker that she had employment; Mother did not maintain a safe home because her paramour, with whom she lives, is an indicated perpetrator of sexual abuse; Mother never pursued mental health treatment; Mother needed to be redirected by the caseworker during her supervised visits with the children). As such, we conclude that Mother's repeated and continued incapacity, neglect, or refusal to comply with her

permanency plan has caused the children to be without essential parental care, control or subsistence necessary for their physical or mental well-being, and the conditions and causes of the incapacity, neglect, or refusal cannot or will not be remedied by Mother.

In her fourth and final issue, Mother argues, in the alternative, that the evidence of record does not support termination under Section 2511(b). To the extent Mother argues that the evidence was insufficient because there was no formal bonding evaluation, we disagree. It is well-settled that trial courts are not required by statute or precedent to order that a formal bonding evaluation be performed by an expert. **See In re K.K.R.-S**., 958 A.2d 529, 533 (Pa. Super. 2008).

Our Supreme Court has explained, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." **In re T.S.M.**, 71 A.3d at 267. The Court further stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **Id.** at 268 (citation omitted).

In considering the affection a child may have for his or her natural parents, this Court has explained:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect

- 8 -

and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

This Court has also stated:

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)).

Instantly, we affirm the order under Section 2511(b) on the basis of the orphans' court opinion, which the testimonial evidence supports. *See* Trial Court Opinion, 11/7/14, at 12-18; 25-30 (finding credible the testimony of Ms. Fratzola, the OCYF caseworker, that a parent-child bond does not exist between the children and Mother, but that a bond does exist between the children and their foster parents). As such, we conclude that the testimonial evidence supports the orphans' court's decision that involuntarily

terminating Mother's parental rights would serve the developmental, physical, and emotional needs and welfare of the children. Accordingly, we affirm the orders involuntarily terminating Mother's parental rights to the children pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2015